IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT HINRICHS, and KELLY HINRICHS, <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Company; and RIMKUS CONSULTING GROUP, INC., <br><br> Defendants. | 4:22CV3243 <br><br> ORDER |

This matter is before the Court on the Motion to Compel (Filing No. 54) as to Defendant, Rimkus Consulting Group, Inc. ("Rimkus"), filed by the plaintiffs, Robert and Kelly Hinrichs. Plaintiffs move to compel Rimkus to fully answer interrogatories and requests for production relevant to their claim for civil conspiracy against Rimkus. (Filing No. 54-1). Rimkus opposes the motion, asserting it has already produced "its entire file relating to this project for Liberty Mutual," and that Plaintiffs are requesting discovery that is not relevant, discoverable, or proportional to the needs of this case.

## BACKGROUND

Plaintiffs filed this action against Liberty Mutual Insurance Company ("Liberty Mutual") and Rimkus on November 4, 2022. (Filing No. 1). As alleged in their Complaint, Plaintiffs own a residence with a slate tile roof in Lincoln, Nebraska, covered by a homeowner's insurance policy purchased through Liberty Mutual. The policy provided coverage for Plaintiffs' residence "against perils including hail." On April 11, 2020, a wind/hailstorm caused significant damage to the residence. The following day, Plaintiffs examined their home and discovered damage caused by the storm, and promptly submitted a claim to Liberty Mutual. Liberty Mutual acknowledged Plaintiffs' claim for damages and assigned them a claim number. According to Plaintiffs, this was the first hail storm to occur near their home since their roof had been fully replaced in 2017 after a 2016 hail storm.

On May 6, 2020, Liberty Mutual dispatched Jason Woodward of Rimkus to inspect the damage to the Plaintiffs' home. Rimkus is an engineering company retained by Liberty Mutual to

investigate insurance claims. Plaintiffs allege Woodward is a consultant and not a structural engineer, and has no prior experience, training, or education that would qualify him to determine damages on a roof. (Filing No. 1; Filing No. 54-5). Although Woodward performed the investigation and prepared the Report of Findings, Peter J. Vaccaro P.E., a Nebraska licensed engineer, "signed off" on the report. (Filing No. 54-4 at pp. 27-111; Filing No. 60 at p. 3).

On May 29, 2020, Woodward issued a report identifying broken slate tiles on the roof of the Plaintiffs' home, but concluded the tiles were broken "for no discernable reason." Woodward also concluded there was "no damage to the residence due to hail impacts," determined there were no indentations to the soft copper metal flashing or fractures to the slate roof tiles, and reported that there was no hail damage to the Plaintiffs' roof because the last occurrence of hail in the area was in 2016. Plaintiffs allege Rimkus failed to chalk any of the soft metals on the roof to properly identify the presence of hail damage, failed to report any hail indentations and damage to the valley metals and chimney flashing on the Plaintiffs' roof, failed to include pictures of certain damages so as to intentionally exclude them from their report, and failed to retain a site-specific meteorological report of the subject property during the date of loss as required by industry custom and practice. (Filing No. 1).

Days later, Liberty Mutual fully denied Plaintiffs' insurance claim, "attributing all damages to wear and tear, deterioration, inherent vice, design, and workmanship." Plaintiffs immediately "put Liberty Mutual on notice of their deficient claims handling," and retained Precision Construction and Roofing ("Precision") to investigate potential damages to the Plaintiffs' home. Precision issued a report that found hail damage to the slate tile of the roof of Plaintiffs' home, pieces of slate found in the gutters and leaf guard areas of the roof, and hail damage to the window trims and soft metal flashing, and estimated $161,499.21 in costs for the repairs. Plaintiffs also obtained "a site-specific meteorological survey" showing 1.75" of hail that fell on the residence on April 11, 2020. Plaintiffs presented Precision's report and the meteorological survey to Liberty Mutual, but Liberty Mutual continued to deny their claim. Plaintiffs then presented their information to Peter Vaccaro at Rimkus, after which Liberty Mutual indicated a further review of their claim was being conducted. However, Liberty Mutual has never evaluated the claim further. (Filing No. 1 at pp. 1-5).

Plaintiffs filed the instant complaint asserting breach of contract and bad faith claims against Liberty Mutual, and a civil conspiracy claim against Liberty Mutual and Rimkus. As to

2

the civil conspiracy claim, Plaintiffs allege that prior to Rimkus' preparation of its report, Rimkus "was aware of the large value of the Plaintiffs' claim for replacement of the tile roof of their home," and "conducted an investigation that was fraudulent, insufficient, and did not conform with customary industry standard and practice and produced a fraudulent report stating there was no damage to the roof of the Plaintiffs' home." Plaintiffs further allege Rimkus' "fraudulent report was made for the benefit of the Defendant, Liberty Mutual, as a basis for Liberty Mutual to completely deny insurance coverage for the Plaintiffs' claim," and that Rimkus' and Liberty Mutual's joint action "constitutes a systematic pattern of conduct to avoid responsibility of insurance coverage for large value claims." (Filing No. 1 at pp. 11-12).

Rimkus moved to dismiss Plaintiffs' complaint, arguing Plaintiffs' claim against Rimkus must be pled as a professional negligence claim—not a civil conspiracy—and that Plaintiffs failed to state such a claim against it. Alternatively, Rimkus argued Plaintiffs alleged insufficient facts to state a civil conspiracy claim. (Filing No. 17). The Court denied Rimkus' motion, rejecting Rimkus' argument that Plaintiffs had alleged a professional negligence claim, and concluding Plaintiffs had alleged "sufficient facts to state a civil conspiracy claim against Rimkus based on bad faith settlement of an insurance claim." The Court stated that although "Rimkus did not deny the insurance claim, [Plaintiffs] allege it conspired in the commission of this tort by agreeing to produce fraudulent reports for Liberty Mutual's benefit." (Filing No. 28). Specifically, the Court considered Plaintiffs' allegations that, although their residence was fully covered by its homeowner's insurance policy for the June 2020 storm damages, Liberty Mutual dispatched Rimkus to investigate the damage with the mutual understanding that the resulting report would be fraudulently authored to report "no damage," which Liberty Mutual relied on to deny Plaintiffs' claim in full. The Court also considered Plaintiffs' allegations that, before authoring its report, Rimkus was aware of the high-value nature of Plaintiffs' claim, but carried out a fraudulent investigation to conceal any damage. Then, even after Plaintiffs provided Liberty Mutual and Rimkus with independent proof of hail damage via the Precision report and the meteorological survey, both defendants refused to respond to the evidence. Thus, accepting Plaintiffs' alleged facts as true and drawing all reasonable inferences in Plaintiffs' favor, the Court found Plaintiffs plausibly stated a claim for civil conspiracy as to Rimkus. (Filing No. 28 at pp. 5-8).

The issue currently before the Court concerns written discovery requests propounded by Plaintiffs upon Rimkus on November 16, 2023, which they assert seek information relevant to

3

their claim for civil conspiracy. Rimkus responded to the discovery on December 18, 2023, answering in part and producing documents, but also lodging several objections. (Filing No. 54-3; Filing No. 54-9). After Plaintiffs' review of Rimkus' responses, counsel met and conferred by telephone on January 4 and April 2, 2024, to discuss what Plaintiffs view as insufficient discovery responses and unsubstantiated objections. On April 5, 2024, the parties emailed the undersigned magistrate judge's chambers requesting a discovery dispute conference in accordance with the case progression order and this district's civil case management practices. After the undersigned magistrate judge reviewed the parties' emailed statements regarding the dispute, Plaintiffs were given leave to file a motion to compel. (Filing No. 54; Filing No. 54-1 at p. 1).

Plaintiffs filed a motion requesting an order compelling Rimkus to answer Interrogatory Nos. 6, 8, 9, 10, 11, 12, 13, and 14, and to produce documents responsive to Requests for Production Nos. (RFP) 4, 7, 8, 11, 12, 13, 15, 16, 17, 22, 24, 25, 26, 30, and 31. (Filing No. 54-1). After the motion was filed, counsel met and conferred and notified they Court that they reached an agreement that Rimkus will supplement its answers to Interrogatory Nos. 6, 8, 9, 10, 11, 12, 13, and 14 (if it is encompassed by the Protective Order for years 2019, 2020, and 2021), and that Rimkus will supplement its responses to RFPs 4, 11, 12, 22, 24, and 25. The parties continue to be at an impasse regarding Rimkus' responses to RFPs 7, 8, 13, 15, 16, 17, 26, 30, and 31, and thus the Court will address those remaining disputed RFPs.

## DISCUSSION

### I. Compliance with Local Rules

Rimkus first argues that the Court should deny Plaintiffs' motion for failure to comply with this district's local rules regarding filing and citing to evidence. (Filing No. 60 at pp. 7-8) (citing NECivR 7.1(a)(2) ("[A] party who does not follow this rule may be considered to have abandoned in whole or in part that party's position on the pending motion."). Specifically, Rimkus asserts Plaintiffs failed to: (1) file an index of evidence; (2) in various instances, failed to cite to pertinent pages of the pleading, affidavit, deposition, discovery material or other evidence upon which it relies; and (3) failed to file an affidavit or declaration identifying and authenticating documents offered as evidence. (Filing No. 60 at p. 8).

Rimkus correctly points out Plaintiffs' technical non-compliance with the local rules regarding filing and citing to evidentiary materials. However, the Court finds Plaintiffs' mistakes

4

are not so egregious justifying outright denial of their motion. Plaintiffs filed a brief and Exhibits A through D in support of their motion, including Rimkus' answers to interrogatories and objections to requests for production at issue. (Filing Nos. 54-1 to 54-9). Plaintiffs' brief also contains citations to the pages of relevant filings on the docket, and citations to their exhibits. See generally Filing No. 54-1. Plaintiffs also filed a declaration and refiled Exhibits A, B, and C with their reply brief to cure their earlier noncompliance with the local rules. See Filing Nos. 61-1 to 61-4. Under the circumstances, the Court will not deem Plaintiffs' motion abandoned for failure to comply with the local rules. See *Bruning v. City of Omaha*, 6 F.4th 821, 826 (8th Cir. 2021) (quoting *Smith v. Insley's Inc.*, 499 F.3d 875, 879 (8th Cir. 2007)) ("District courts have broad discretion to . . . enforce (or not enforce) local rules.").

## II.   Merits of Plaintiffs' Motion

Rimkus argues that Plaintiffs' motion should also be denied on its merits because it has already produced "its entire file relating to this project for Liberty Mutual," which it asserts contains all the information relevant to Plaintiffs' claims. Rimkus generally objects to the remaining disputed discovery requests as seeking documents that are not relevant, discoverable, or proportional to the needs of this case. (Filing No. 60 at pp. 7-9).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The proportionality analysis requires the court to weigh "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation[.]" *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). The broad scope of Rule 26 generally allows discovery "unless it is clear the information sought can have no possible bearing on the case." *Ingram v. Covenant Care Midwest, Inc.*, 2010 WL 1994866, at *3 (D. Neb. 2010). But, "[w]hile the standard of relevance in the context of discovery is broader than in the context of admissibility . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors

5

of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* (internal citations omitted). Because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." *Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2022 WL 3718115, at *5 (D. Neb. Aug. 29, 2022) (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)).

The Eighth Circuit has explained that Rule 26(b)(1) does not give a party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). "Litigation in general and discovery in particular . . . are not one sided." *Id.* "[A]s long as the parties request information or documents relevant to the claims at issue in the case, and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed." *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

### A. Interrogatories

Plaintiffs originally moved to compel Rimkus to fully answer Interrogatory Nos. 6, 8, 9, 10, 11, 12, 13, and 14.[1] (Filing No. 54-1). Counsel have since notified the Court that they have agreed for Rimkus to supplement its answers to Interrogatory Nos. 6, 8, 9, 10, 11, 12, and 13. Counsel also represent Interrogatory 14 is resolved "if we can agree that it will be covered by the [Protective Order] and encompass years 2019, 2020, and 2021." Interrogatory No. 14 asks Rimkus to state how many inspections Rimkus has performed on behalf of Liberty Mutual in Nebraska in the last five years. To the extent the parties have not yet already agreed, the Court finds Interrogatory No. 14 should be covered under the Protective Order and encompass years 2019, 2020, and 2021.

### B. Requests for Production of Documents

Plaintiffs originally moved to compel Rimkus to produce documents responsive to Requests for Production Nos. 4, 7, 8, 11, 12, 13, 15, 16, 17, 22, 24, 25, 26, 30, and 31.[2] The parties have since agreed that Rimkus will supplement its responses to RFPs 4, 11, 12, 22, 24, and 25. The parties did not reach an agreement as to RFPs 7, 8, 13, 15, 16, 17, 26, 30, and 31, and continue to request that the Court resolve their dispute as to those.

---

[1] Plaintiffs' interrogatories and Rimkus' answers and objections are contained in Filing No. 60-2.
[2] Plaintiffs' RFPs and Rimkus' objections are contained in Filing No. 60-3.

Rimkus contends it has complied with all its discovery obligations by producing over 980 pages of documents that include: (1) both reports issued following Woodward's investigation, (2) the substantive information relied upon to issue those reports, (3) the substantive data, photos, drone footage and weather data relied upon in issuing its reports, (4) the invoicing related to this matter, (5) the Matter Information Sheet related to this work, (6) the Confirmation of Assignment email and letter to Liberty Mutual and (7) the job tracking sheet detailing every Rimkus employee who worked on the matter, the date and time of his/her work, and associated commentary. ([Filing No. 60 at p. 4](#)). Rimkus argues its internal policies, procedures, guidelines, training materials, and employee evaluations "have nothing to do" with Plaintiffs' claim for conspiracy, and are only arguably relevant to a professional negligence claim. Rimkus asserts Plaintiffs have "improperly" attempted to "artificially broaden the scope of discovery in this case to justify its objectionable requests," by alleging unsupported facts or legal arguments regarding their claim for civil conspiracy in their brief. ([Filing No. 60 at p. 9](#)).

The remaining disputed RFPs concern Plaintiffs' requests for Rimkus's internal policies, procedures, guidelines, training documents, and other internal memoranda concerning a variety of subjects, specifically:

- RFP No. 7 seeks production of "reference materials, guidelines, white paper, policies, handouts, manuals, outlines, articles and/or documents that have been distributed by and/or disbursed by Rimkus and/or its agent" to determine how to handle Plaintiffs' claims as to wear and tear, construction defect, blistering, improper installation and nailing, and mechanical damage.

- RFP No. 8 seeks production of "reference materials, guidelines, policies, handouts, manuals, outlines, articles and/or documents that have been distributed by and/or disbursed by Rimkus and/or its agent in determining whether to repair or replace damages in the handling of Plaintiffs['] claim."

- RFP No. 13 asks Rimkus to "produce any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether damages are new or preexisting."

- RFP No. 15 asks Rimkus to produce "internal newsletters, bulletins, publications and memoranda relating to policies and procedures for inspecting, handling, reporting, writing and drafting weather related insurance reports and/or inspections that were

7

issued from six (6) months prior to the date of loss to the present, including, but not limited to, memoranda issued to claims adjusters, internal engineers and consultants."

- RFP No. 16 seeks "the documents, manuals, and training materials, including audio and/or videotapes used in instructing, guiding, training, overseeing, or supervising your personnel, including engineers, field representatives, consultants, or anyone employed in inspecting property damage and the related claim" for a period of one-year prior to the date of the loss through the present.

- RFP No. 17 asks Rimkus to produce written procedures or policies, effective six months prior to the date of loss through the present, for (a) handling weather related insurance claims (specifically, hail) in Nebraska, and for (b) determining whether replacement versus repair of a roof is required.

- RFP No. 26 asks Rimkus to produce "any and all procedures and/or processes and/or guidelines related to how Rimkus and their employees are to: 1) inspect properties for damage; 2) draft reports; 3) issue reports; 4) review reports; and 5) issue the final reports."

- RFP No. 30 asks Rimkus to produce "training materials or guidelines that Rimkus provides to their employees on how to write engineering reports and how to conduct field inspections," and RFP 31[3] asks for training materials or guidelines provided by Liberty Mutual to Rimkus regarding the same.

(Filing No. 60-3).

Rimkus lodged many of the same objections to each of the above RFPs. First, Rimkus objected to RFP Nos. 7, 8, 13, 15, 16, 17, 26, 30, and 31 "to the extent [the requests] seeks privileged or other work product protected documents." Despite its privilege objections, Rimkus represents it is not withholding any documents on that basis, aside from documents "that are deemed to be presumptively privileged pursuant to the parties' Rule 26(f) Report." (Filing No. 60-6 at ¶ 9; Filing No. 60 at pp. 17-18). Rimkus does not otherwise explain or elaborate upon its privilege objections, and thus it appears Rimkus has not met its burden to establish any of the above requests seek work product or privileged documents; however, based upon Rimkus's representation that it is not withholding responsive documents on that basis aside from those the

---

[3] Rimkus asserts does not have any further responsive documents in its possession, nor is it withholding any documents on the basis of its objections. (Filing No. 60 at pp. 22-23).

8

parties agreed would be presumptively privileged in their Rule 26(f) Report, the Court need not rule on the merits of Rimkus's privilege objections. See *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020) (The party asserting a privilege has the burden of showing that the privilege applies).

Rimkus also objects to RFPs 7, 8, 13, 15, 16, and 17 on the basis that they are "based upon an improper legal conclusion" because it "is not an adjuster or insurer of claims." Rimkus contends it is an engineering firm that does not handle insurance claims, and thus it has no documents responsive to the portions of these RFPs dealing with claims handling. Rimkus also further objects that all of the above RFPs seek irrelevant documents, and that they are overly broad and unduly burdensome, not proportional to the needs of this case, and are "vague and ambiguous as to what is actually being requested." Rimkus argues its internal policies and procedures have "no relevance to Plaintiffs' conspiracy claim." (Filing No. 60 at p. 23). Rimkus also argues Plaintiffs failed to make an adequate threshold showing of relevancy regarding Rimkus' internal policies and procedures for training because "Rimkus has produced all documents in its possession related to the report and investigation, and thus related to Plaintiffs' claim. Rimkus' internal policies, procedures, and similar documents provide nothing in terms of making any claim or defense in this matter more or less probable provide nothing in terms of making any claim or defense in this matter more or less probable." (Filing No. 60 at pp. 19-20).

Plaintiffs counter that even though Rimkus itself is not an adjuster or insurer of claims, as recognized by the district judge in denying Rimkus' motion to dismiss, "Nebraska law does allow the actors (Rimkus) who conspire in the commission of the denial [of the insurance claim] to be liable to Plaintiffs for injuries sustained (property damage) as a result of the tortious conduct that forms the basis for conspiracy (Rimkus' report used as a basis to allow Liberty to escape bad faith liability)." Plaintiffs assert they "have a right to know how Rimkus trains their employees on the exact basis Liberty Mutual used their report to deny Plaintiffs['] claim[.]" (Filing No. 54-1 at pp. 13-14). Plaintiffs argue they should be allowed to conduct discovery into Rimkus' internal policies, procedures, guidelines, training materials, and employee evaluations, as those materials go to Rimkus' actions in assigning a purportedly unqualified individual to inspect Plaintiffs' roof, and may further show Rimkus was or was not a neutral third party in its inspection and evaluation of Plaintiffs' roof. (Filing No. 61 at pp. 4-5). Plaintiffs maintain these documents are relevant to their allegations that Rimkus provided a fraudulent report to Liberty Mutual that omitted certain

9

evidence showing hail damage, and dispatched an unqualified consultant to conduct the investigation. Plaintiffs argue Rimkus' training materials and guidelines—and Rimkus' pattern of adherence or departure from such guidelines—are relevant to Plaintiffs' allegations that Rimkus generates fraudulent/insufficient reports as part of a conspiracy with Liberty Mutual to regularly deny claims, and did so in this case. (Filing No. 54-1 at pp. 16-19; Filing No. 61 at pp. 4-5).

First, although the Court understands Rimkus' position that it is an engineering firm and not a claims adjuster, the Court will overrule its objections that RFPs 7, 8, 13, 15, 16, and 17 are "based upon an improper legal conclusion." Liberty Mutual retained Rimkus to investigate Plaintiffs' insurance claim for hail damage to their roof. As stated by the district judge in denying Rimkus' motion to dismiss, Plaintiffs' claim against Rimkus is primarily one of civil conspiracy. (Filing No. 28). So, although "Rimkus did not deny the insurance claim," Plaintiffs allege Rimkus "conspired in the commission of this tort by agreeing to produce fraudulent reports for Liberty Mutual's benefit." (Filing No. 28 at p. 7). Plaintiffs' allegations of a civil conspiracy directly implicate Rimkus' investigation of Plaintiffs' roof for their insurance claim with Liberty Mutual, which investigation Plaintiffs allege was fraudulent and/or made in bad faith at the behest/direction of Liberty Mutual to be used as a basis to deny Plaintiffs' claim. Thus, Plaintiffs' references to "handling Plaintiffs' claim" are not vague or based upon an improper legal conclusion; rather, Plaintiffs' requests are seeking information related to their allegations that Liberty Mutual conspired with Rimkus to deny Plaintiffs' claim.

Next, to the extent Rimkus has objected that these RFPs are "unduly burdensome" the Court finds such objections should be overruled because Rimkus has offered no explanation or evidence specifically supporting those objections. "A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Doe v. Nebraska*, 788 F.Supp.2d 975, 981 (D. Neb. 2011)). Rule 26 requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (citation omitted); see also *St. Paul Reinsurance*, 198 F.R.D. at 511 (N. 1997) (the "mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection."). Plaintiffs' RFPs are not overbroad

on their face—they are either limited to certain time periods or certain topics—and Rimkus has not otherwise explained or supported its conclusory objections on grounds of undue burden.

The primary dispute regarding the above RFPs is one of relevance and proportionality. From Rimkus' perspective, it is an engineering firm that inspected Plaintiffs' roof and authored a report that it submitted to Liberty Mutual; Plaintiffs' requests for its internal training policies and guidelines "might arguably relate to a claim alleging a breach of the standard of care (i.e., professional negligence), but no such claim is asserted." (Filing No. 60 at p. 5). Rimkus therefore argues its internal policies and procedures have "no relevance to Plaintiffs' conspiracy claim." But the scope of discovery is not quite as narrow as Rimkus suggests. While Rimkus is correct that the district judge determined "the facts alleged do not support the conclusion that Rimkus' acts or omissions in this case were of a professional nature," that was because Plaintiffs allege that Rimkus never intended, or made any attempt, to perform its investigation or author its report using professional skill or judgment. (Filing No. 28 at p. 5). Instead, the district judge found Plaintiffs sufficiently alleged a claim for civil conspiracy against Rimkus. "A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object." *deNourie &* *Yost Homes, LLC v. Frost*, 854 N.W.2d 298, 315 (Neb. 2014). A civil conspiracy claim "depends upon the existence of an underlying tort," *id.*, and bad faith settlement of an insurance claim is a cause of action in tort. *Ruwe v. Farmers Mut. United Ins. Co.*, 469 N.W.2d 129, 134 (Neb. 1991). Bad faith is an "intentional tort" that requires the policyholder to "show both an absence of a reasonable basis for denying benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 432 (Neb. 2022). The tort of bad faith "embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false accusations, and so forth." *Id.* Even if a party does not actively engage in the denial of an insurance claim, actors who conspire in the commission of such wrongful acts are liable for all injuries sustained by the plaintiff "as a result of the tortious conduct which forms the basis for the conspiracy." (Filing No. 28 at p. 7) (citing *United Gen. Title Ins. Co. v. Malone*, 858 N.W.2d 196, 215 (Neb. 2015). "Importantly, '[a] party does not have to prove a civil conspiracy by direct evidence of the acts charged. It may be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished.'" *Id.* (citing *deNourie*, 854 N.W.2d at 316).

11

Rimkus asserts Plaintiffs' discovery requests stem from their "improper attempt to engage in a fishing expedition to find any factual support for their conclusory allegations that Rimkus engaged in a civil conspiracy." (Filing No. 60 at p. 3). But if the propounding party was required to have substantial "factual support" before a responding party is required to respond to discovery requests, it begs the question as to how the propounding party is to obtain that factual support. The district judge determined Plaintiffs have at least plausibly alleged a claim for civil conspiracy, and thus Plaintiffs are entitled to discovery to support their claim. The Court must therefore determine whether Plaintiffs' requests seek documents that could show "indefinite acts, conditions, and circumstances" supporting their claims that Rimkus engaged in a fraudulent or bad faith investigation on behalf of Liberty Mutual, and whether such requests are proportional to the needs of the case. See Fed. R. Civ. P. 26(b).

After review, the Court is persuaded by Plaintiffs' arguments that Rimkus' policies, training materials, and guidelines (or lack thereof) are relevant to their claim for civil conspiracy in this particular case. As outlined by the district judge, Plaintiffs specifically allege that Rimkus dispatched Woodward to inspect Plaintiffs' roof for their insurance claim with Liberty Mutual, but that (1) Woodward is not a structural engineer and has no training to determine roof damages, and (2) Woodward, on behalf of Rimkus, intentionally excluded photos of certain damage and meteorological information from his report in furtherance of this objective. (Filing No. 28 at p. 4). Plaintiffs claim "Rimkus was deploying unqualified inspectors to the homes of insureds to create the illusion that thorough structural investigations were occurring. But once these 'investigators' were on-site, they did not use any professional skill or judgment. Instead, according to [Plaintiffs], they walked the property, abstained from using standard investigation procedures, purposefully failed to document damage, and authored reports with a foregone conclusion—that no damage was detected." (Filing No. 28 at pp. 4-5). So, although the Court understands Rimkus' point that this is not a professional negligence case, as recognized by the district judge, "standard investigation procedures" may also prove relevant to a bad faith investigation claim. Rimkus' training materials and guidelines as requested by Plaintiffs—and Rimkus' adherence or departure from such guidelines—are relevant to Plaintiffs' allegations that Rimkus generated a fraudulent/insufficient report after failing to use standard investigation procedures as part of a conspiracy with Liberty Mutual to deny Plaintiffs' claim. Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case.

12

See *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972). "Rule 26(b)(1) does not give any party 'the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case,' because '[l]itgation in general and discovery in particular . . . are not one sided.'" *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)).

However, to the extent that RFPs 7, 8, 13, 26, and 31 contain no timeframe or definite time period from which Plaintiffs are requesting documents, the Court will limit such requests to policies, procedures, training materials, guidelines, etc., in effect or distributed during the year 2020, as Rimkus' investigation of Plaintiffs' roof on behalf of Liberty Mutual took place in May 2020. See *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998) ("The District Court does have discretion to limit the scope of discovery.").

Plaintiffs request appropriate sanctions, including reasonable attorney fees, associated with filing the instant motion. Rule 37 of the Federal Rules of Civil Procedure provides that if a motion to compel disclosure or discovery is granted in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Rimkus responded to Plaintiffs' request for fees in its brief opposing the motion to compel. (Filing No. 60 at p. 24-25). After review and under the circumstances, the Court finds that expenses should not be apportioned, and each party shall be responsible for its own costs. Accordingly,

**IT IS ORDERED:**

1. Plaintiffs' Motion to Compel (Filing No. 54) is granted, in part.
2. Rimkus shall supplement its responses to RFPs 7, 8, 13, 15, 16, 17, 26, 30, and 31 as outlined above within 30-days of this Order.
3. No party is awarded fees or expenses in connection with this motion.

Dated this 15th day of November, 2024.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge